IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES MCDEVITT *
*
*
v. * Civil No. JFM-08-3431
*
RELIANCE STANDARD *
LIFE INSURANCE COMPANY *
*********

OPINION

Charles McDevitt has brought this action against Reliance Standard Life Insurance Company under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq ("ERISA"). McDevitt alleges that Reliance violated the terms of a short-term disability insurance plan ("the Plan") by refusing to award him disability benefits. The material facts are not in dispute, and the parties have filed cross-motions for summary judgment.

I.

McDevitt was employed by Tricon Construction, Inc. ("Tricon") as a construction foreman. On June 29, 2006, Plaintiff was exposed to fumes when a co-worker cut a steel beam at a construction site. On June 30, McDevitt, suffering from severe head and body aches, sought treatment at the Emergency Room of St. Agnes Hospital ("St. Agnes"), where he was diagnosed with "metal fume fever" and discharged that day.

McDevitt returned to St. Agnes on July 3 complaining of blood in his urine (hematuria) and shortness of breath. He was subsequently admitted to the Intensive Care Unit (ICU) and was diagnosed with "acute respiratory failure secondary to inhalation injury [the June 29 exposure] with bacterial pneumonia complications and . . . acute respiratory distress syndrome." His condition was a "progression of a single disease process [pneumonia], from uncomplicated to

complicated over several days[]" resulting in "increasing symptoms of fever, hematuria, and respiratory distress . . . ." On July 4th McDevitt was intubated and placed in the intensive care unit. He remained in that unit until July 28th, when he was transferred to a rehabilitation bed. McDevitt returned to work on October 15, 2006.[1]

At all relevant times, McDevitt was covered by the Plan, which was offered to employees of Tricon and insured by Reliance. The Plan's exclusions provision reads as follows:

> Weekly Income Benefits are not paid for any period of disability caused by:
> (1) An intentionally self-inflicted injury; or ["self-inflicted injury exclusion"]
> (2) An act of war, declared or undeclared; or
> (3) The Insured committing a felony; or
> (4) Sickness which is covered by a Worker's Compensation Act, or other worker's disability law; or ["sickness exclusion"]
> (5) Injury which occurs out of or in the course of work for wage or profit. ["injury exclusion"][2]

For reasons not disclosed on the record, a jury found (contrary to a finding made by Maryland's Workers' Compensation Commission) that McDevitt's pneumonia and respiratory failure were not caused by the June 29th incident.

II.

A motion for summary judgment should be granted when there is no genuine issue of

---

[1] Obviously the case does not involved alleged malingering. McDevitt returned to work approximately three and a half months after the June 29th incident and was hospitalized for a substantial period to time during those three and a half months.

[2] Although the parties have not briefed the issue, it appears that the fifth exclusion is drafted as it is to exclude coverage for bodily injury suffered by a Tricon employee not only as a result of work performed by the employee for Tricon (which, of course, would be covered by Tricon's own workers compensation policy) but also for bodily injured suffered by a Tricon employee as the result of work performed by the employee for someone other than Tricon. This makes sense because the Reliance disability policy was purchased by Tricon to provide a supplemental benefit to its employees. Understandably Tricon would not want that benefit to extend to bodily injury suffered by the employee while moonlighting (even if the injury would not be compensated by another employer's workers' compensation policy).

material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The materiality of facts is determined by the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under ERISA, "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan . . ." 29 U.S.C. § 1132(a)(1)(B); *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008). Where a plan gives an administrator or fiduciary discretion to determine the beneficiary's eligibility for benefits, the administrator's decision about eligibility should be reviewed for an abuse of discretion. *Champion v. Black & Decker Inc.*, 550 F.3d 353, 359 (4th Cir. 2008); *Booth v. Wal-Mart Stores Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335, 341–42 (4th Cir. 2000); *Brogan v. Holland*, 105 F. 3d 158, 161 (4th Cir. 1997). Under the abuse of discretion standard, an administrator's decision will be upheld if it is reasonable. *Champion*, 550 F.3d at 359; *Brogan*, 105 F. 3d at 161. Reasonableness requires a "deliberate principled reasoning process" and a decision "supported by substantial evidence." *Brogan*, 105 F. 3d at 161 (internal citations omitted). In determining reasonableness, a court may consider eight nonexclusive factors:

> "(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Champion*, 550 F.3d at 359 (quoting *Booth*, 201 F.3d at 341–42) (internal quotations omitted).

In this case both parties agree that the Plan gives Reliance discretion to determine eligibility. Both parties also agree that in denying McDevitt's disability benefits, Reliance was

acting under a conflict of interest because Reliance was responsible both for evaluating and paying claims under the Plan. *See Glenn*, 128 S.Ct. at 2349.

III.

McDevitt's argument is straightforward. He asserts he was entitled to benefits under the Plan for the pneumonia and respiratory failure which he suffered because these injuries were not caused by an intentionally self-inflicted injury, an act of war, the commission of a felony, a sickness covered by a Worker's Compensation Act, or an "injury" which occurred as the result of his employment. While acknowledging (as it must) that McDevitt's disability was not caused by an intentionally self-inflicted injury, an act of war or the commission of a felony, and while also acknowledging that McDevitt has been denied coverage under Maryland's Worker's Compensation Act for his disability, Reliance nevertheless contends that the Plan does not afford McDevitt coverage because, according to Reliance, the term "injury" in the fifth clause of the exclusion provision is sufficiently broad to include the term "sickness" in the fourth exclusionary clause.

As indicated above, the Fourth Circuit has set forth a multi-factored test for determining whether the decision of the administrator of a plan should be deemed to be reasonable. *See Brogan,* 105 at 158, 161. However, in any case "the plain language of an ERISA plan must be enforced in accordance with 'its literal and natural meaning.'" *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998). Accordingly, courts must defer to the plain language in an ERISA plan when that language is unambiguous. *Id*. at 173 (quoting *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997)).

Applying this rule, I agree with McDevitt that the fourth and fifth clauses of the exclusion provision "literally and naturally" mean that he is entitled to coverage. The Plan distinguishes

between "sickness" and "injury," and McDevitt suffered what ordinarily is understood to be a "sickness" not a "injury." In that regard the Plan goes on to define "sickness" as an "illness or disease causing disability . . .," and pneumonia and respiratory failure certainly are commonly considered as "illnesses or diseases."

In response to McDevitt's argument, Reliance points out that the Plan defines "injury" as "[1] bodily injury [2] resulting directly from an accident, [3] independent of all other causes."[3] Seeking to buttress its position, Reliance notes that the Webster's New World Dictionary defines "injury" as "physical harm." A different Webster's dictionary defines "injury" as "1. Damage of or to a person, property, reputation or thing. 2. A wound or other specific damage." WEBSTER'S II NEW RIVERSIDE UNIV. DICTIONARY 186 & 629 (1994).

In my view Webster's definitions of "injury" undermine rather than support Reliance's argument. Both "physical harm" and "a wound or other specific damage" connote tangible change to an external body part or internal organ directly caused by invasion or impact. Of course, I recognize that philosophers and physicians may debate where lies the dividing line between "injury" and "illness and disease." Indeed, Socractic inquiry into conventional distinctions often is creative and may lead to scientific breakthroughs that otherwise would not be achieved. However, the terms of insurance policies must be construed not in the context of academic discourse but in the context of the language used by ordinary persons whose contractual relationships the policies are intended to govern.

---

[3] Much of Reliance's argument is directed toward demonstrating that the incident that occurred on June 29, 2006 was "an accident." In his reply brief McDevitt concedes that its disability was unexpected, and undoubtedly he did not subjectively foresee (and a construction foreman standing in his position would not reasonably foresee) exposure to injury-causing fumes by working at a construction site. *See generally Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 343 (4th Cir. 2006). Thus, while I find that Reliance's position is otherwise unmeritorious, I find its argument on the "accident" issue to be well founded.

It cannot be said the reasons Reliance has given in support of its denial of benefits in this case are frivolous. They are, however, unfortunate.[4] Of course, insurance companies owe a duty to other participants in an ERISA plan (and to their shareholders) not to pay benefits to applicants who are not entitled to receive them. However, the ultimate purpose of insurance is to provide coverage to those who have contracted for it (or who are beneficiaries of a contract made on their behalf by an employer or other third party). It is not to erect administrative barriers, increase transaction costs, or delay the payment of legitimate claims. Whenever a non-governmental insurer becomes blind or indifferent to this simple proposition, public confidence in the integrity and efficacy of the system of private insurance inevitably is eroded.

A separate order effecting the rulings made in this opinion is being entered herewith.

DATE: 10/13/2009

__/s/____________________
J. Frederick Motz
United States District Judge

[4] Reliance appears to be irritated that it, rather than Tricon's workers' compensation carrier, is being asked to cover McDevitt's claim. This irritation is understandable. The jury's verdict finding that McDevitt's pneumonia and respiratory failure did not arise from the June 29, 2006 incident is puzzling and unexplained on the record. However, Reliance's irritation does not constitute good cause for denying McDevitt the coverage to which he is entitled.